UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID DEMAY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:09CV276 RWS |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff David Demay is a railroad worker who was injured on the job. He filed a suit for his injuries against his employer Defendant Norfolk Southern Railway Company ("Norfolk") in state court. Norfolk removed the case to this Court asserting federal question jurisdiction and seeking a ruling that Demay's claim is exclusively controlled by the Longshore and Harbor Workers Compensation Act ("Longshore Act"), 33 U.S.C. § 901 *et seq*. Demay has filed a motion to remand this matter to state court. Norfolk has filed a motion to dismiss the case based on a lack of jurisdiction. Because I find that the Longshore Act does not apply to Demay's claim I will grant his motion of remand.

*Legal Standard*

When ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a district court is free to review matters outside of the complaint such as affidavits and documents. Osborn v. United States, 918 F.2d 724, 729-31 (8th Cir. 1990). Unlike a decision based on a Rule 12(b)(6) motion, a court's review of information outside of a complaint does not convert a Rule 12(b)(1) motion into a Rule 56 motion for summary judgment. Id. A Rule 12(b)(1) motion is distinct in

that, unlike a Rule 12(b)(6) motion, when a factual challenge to jurisdiction is made by a movant there is no presumptive truthfulness attached to a plaintiff's allegations in the complaint. Id. at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)).

*Background*

Plaintiff Demay is a railroad switchman/conductor employed by Defendant Norfolk. Demay lives in Huntsville, Missouri which is his home terminal for the railroad. On October 22, 2008, Demay was injured at work when he was temporarily working for the railroad at its yard in Norfolk, Virginia.

Demay was injured at the railroad's Lamberts Point Coal Terminal. Lamberts Point is a coal loading facility which is used solely to load coal onto oceangoing vessels. Lamberts Point has several yards where work is performed. Loaded coal cars are stored in the CT yard prior to being moved to the Barney Yard. Once placed in the Barney Yard, the loaded cars are released one by one and roll down and incline into one of two rotary dumpers. The dumpers in turn rotate a car 180 degrees and dump the coal onto conveyers which move the coal to Pier 6 for deposit into the holds of coal ships. The only purpose of the Barney Yard is to move loaded coal cars into the rotary dumpers. Once the cars are unloaded they are moved to the empty yard.

Demay's crew was in the process of "spotting" or dropping off rail cars loaded with coal when he was injured. The rail cars were shoved by an engine into the Barney Yard. As was the custom, Demay climbed into the lead loaded car and directed the movement of the cars into the Barney Yard via radio communication with the locomotive engineer who was at the other end of the moving cars. When the cars were properly placed Demay instructed the engineer to stop the train. While climbing out of the car Demay fell, allegedly due to a defective grab iron (a ladder

on the side of the car), landed on the tracks breaking several ribs.

Demay was not involved in unloading the cars. His crew's job was to place the rail cars in the Barney Yard and then set their handbrakes to keep them in place. After setting the brakes, had Demay not been injured, he would have left the Barney Yard and returned to another yard to continue switching out rail cars. After the cars were left in the Barney Yard some other person or crew was responsible for releasing the handbrakes and rolling the cars down the incline to the dumpers. Demay was not involved in releasing the cars to the dumpers.

Demay filed a lawsuit in Missouri state court to recover for his injuries under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60. Norfolk removed the case to this Court asserting federal question subject matter jurisdiction. Norfolk asserts that based on the location and Demay's activity at the time of his injury, Demay was engaged in maritime employment and any claim he asserts must be made under the Longshore Act. Although a case filed in state court under the FELA may not be removed, Norfolk argues that removal was proper because the Longshore Act provides the exclusive remedy in this matter.

Norfolk has moved to dismiss this case under 12(b)(1) asserting that because Demay's claim is controlled by the Longshore Act, he is required to file his claim with the United States Department of Labor.

Demay asserts that the Longshore Act does not apply to his claim and moves to remand this matter back to state court.

The parties have submitted voluminous materials with their motions. Because Norfolk has moved to dismiss this matter under Fed. R. Civ. P. 12(b)(1) I have reviewed the materials to determine whether jurisdiction is proper in this Court.

*Analysis*

Demay filed this action in state court asserting a claim under the FELA. While both federal and state courts have concurrent jurisdiction over such claims, if the claim is initially filed in state court it may not be removed to federal court. 28 U.S.C. § 1445(a).

Norfolk asserts that based on the facts of the case, Demay's exclusive remedy is to file a claim with the Department of Labor under the Longshore Act. 33 U.S.C. § 905(a). Norfolk states that it removed the case to allow a federal judge to make the determination of whether the Longshore Act's exclusive remedy applies in this matter. See In re CSX Transp., Inc., 151 F.3d 164, 16 (4th Cir. 1998)("The question of whether the LHWCA applies to a work-related injury is exclusively a federal question which Congress never intended for state courts to resolve."). The United States Supreme Court has held that if an injury is covered by the Longshore Act then that remedy is exclusive and a worker may not bring a claim under the FELA. Chesapeake and Ohio Ry. Co. v. Schwalb, 493 U.S. 40, 42 (1989).

In order to determine whether I have jurisdiction over this matter I must first determine whether the Longshore Act applies to Demay's claim. If it does, the case must be dismissed because Demay must seek a remedy for his injury with the Department of Labor. If it does not, the case must be remanded because Demay chose to litigate his FELA case in sate court.

*Scope of Longshore Act*

Whether the Longshore Act applies to a worker's injury requires a court to determine: 1) if the injured employee was working at a maritime situs, and 2) whether the injured employee was working in a maritime status. Northeast Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 265 (1977).

To meet the situs requirement, an injury must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). See also Schwalb, 493 U.S. at 45.

The parties do not dispute that the Lamberts Point Terminal is a maritime situs under the Longshore Act. See also Etheridge v. Norfolk & Western Ry. Co., 9 F.3d 1087, 1089 (4th Cir. 1993)(the court notes that the parties in that case agreed that Lamberts Point is a maritime situs).

The Supreme Court has found railroad workers can be covered by the Longshore Act even though they received their injuries while performing traditional railroad work while at a maritime situs if the work was deemed to be of maritime status. See Chesapeake, 493 U.S. at 47 (railroad workers injured while servicing coal conveyer-belts and dumpers which removed coal from rail cars were performing work that was essential to the loading process and therefore covered by the Act).

The key issue in this matter then is whether Demay was working in a maritime status when he was injured. The Supreme Court has held that land-based activity is considered maritime employment only if it is an integral or essential part of loading or unloading a vessel. Northeast Marine Terminal Co., 432 U.S. at 265 - 279. In that case the Court found the intent of Congress's meaning of "maritime employment", which is not defined in the Longshore Act, is gleaned from an example in a Committee Report which

> clearly indicates an intent to cover those workers involved in the essential elements of unloading a vessel taking cargo out of the hold, moving it away from the ship's side, *and carrying it immediately to a storage or holding area*. The example also makes it clear

-5-

that persons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered. Thus, *employees such as truckdrivers, whose responsibility on the waterfront is essentially to pick up or deliver cargo unloaded from or destined for maritime transportation are not covered*."

Id. at 266 (emphasis added).

The Court has also stated that in the context of railroad coal car work at a maritime situs that the "loading process begins when a hopper car is rolled down an incline to a mechanical dumper which is activated by trunnion rollers and which dumps the coal through a hopper onto conveyor belts." Schwalb, 493 U.S. at 453.

The facts in the present case establish that Demay was engaged in an activity that preceded the loading process when he was injured. He placed the rail cars in the Barney yard where the loading process would be carried out by others. His work is analogous to the truck driver who delivers goods to the pier to be loaded by others.

Moreover, the Supreme Court has expressly stated that the loading process of coal onto ships does not begin until the hopper car is rolled down an incline to the dumpers. Id. The Fourth Circuit Court of Appeals expressly relied on this determination by the Supreme Court of when the loading process begins in Etheridge. 9 F.3d at 1090. In that case a brakeperson was injured while trying to get a rail car moving to the dumpers in the Barney Yard. The court found that her injury was covered by the Longshore Act because she was attempting to move a hopper car down the incline to the dumpers. In support of its conclusion, the court expressly cites to the Supreme Court's opinion in Schwalb which states when the loading process begins. Etheridge, 9 F.3d at 1090.[1]

---

[1] Norfolk suggests in their papers, without citation to authority, that because the injury in this matter took pace in Norfolk, Virginia, which is located in the Fourth Circuit, that Fourth

Norfolk offers the decision of an administrative law judge with the Department of Labor in support of its position that Demay's job at the time of his injury qualified as a maritime status. <u>In the Matter of: Russell v. Norfolk & Western Railway Co.</u>, 1996 WL 773335 (Dec. 6, 1996). In that proceeding a railroad employee was injured when he fell off a car being moved in Lamberts Point's empty yard. The judge found that an injured employee would be deemed to have maritime status regardless if he was injured in the CT yard, the Barney Yard, or the empty yard because his activity in each yard was integral to the process of loading coal onto ships.[2] I find this determination to be an over broad reading of the decisions in <u>Schwalb</u> and <u>Etheridge</u>. In <u>Schwalb</u> the Court instructed that an inquiry must be made to the actual activity of an employee when he is injured. <u>Schwalb</u>, 493 U.S. at 47 (employees are covered under the Longshore Act "when they are injured while performing a task integral to loading a ship"). The point at which the activity of loading coal onto a ship becomes integral is when a hopper car is rolled down an incline to a mechanical dumper. <u>Schwalb</u>, 493 U.S. at 453.

In the present case Demay was injured before that process began. He was placing rail cars in the Barney yard and braking them in position. Some other rail worker at some other undetermined time would then initiate the loading process by releasing the cars' brakes and allowing the cars to move down the incline to the dumpers. As a result, I find that Demay's

---

Circuit cases should be precedents on the decision in this Court. While this position is novel and without foundation, I did find the Fourth Circuit's express reliance on <u>Schwalb</u> regarding the start of the coal loading process to be instructive.

[2] The administrative law judge also found that even if the claimant was not involved in maritime employment when he was injured in the empty yard, he qualified for coverage under the Longshore Act because at the time of his injury he "spent a substantial part of his employment in indisputable maritime activity." No facts have been offered in the present case which suggest that Demay spent a substantial part of his employment with Norfolk in maritime activity.

injury is not covered by the Longshore Act and this case must be remanded to state court.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant's motion to dismiss [#9] is **DENIED**.

**IT IS FURTHER ORDERED that** Plaintiff's motion to remand this case to state court [#15] is **GRANTED**.

**IT IS FURTHER ORDERED that** all other pending motions are denied without prejudice as moot.

                                                RODNEY W. SIPPEL
                                                UNITED STATES DISTRICT JUDGE

Dated this 24th day of April, 2009.